**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANIMAL MEDICAL CENTER | ) |
| OF ORLAND PARK, INC. | ) |
| on behalf of plaintiff and | ) |
| the class members defined herein, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SCRATCH FINANCIAL, INC. | ) |
| d/b/a SCRATCHPAY | ) |
| and JOHN DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

## INTRODUCTION

1.      Plaintiff, Animal Medical Center of Orland Park, Inc., brings this action to secure redress for the actions of Defendants, Scratch Financial, Inc. d/b/a/ Scratchpay and John Does 1-10,  in sending or causing the sending of unsolicited advertisements to telephone facsimile machines (Exhibits A-B) in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"),  the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.      The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of its paper and ink or toner and the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized

1

faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3.     Plaintiff Animal Medical Center of Orland Park, Inc.  is an Illinois corporation with offices at 16200 S. LaGrange Road, Orland Park, Illinois, where it maintains a telephone facsimile machine that automatically prints on paper using toner/ ink.

4.     Defendant Scratch Financial, Inc. d/b/a/ Scratchpay ("Defendant" or "Scratchpay"),  is a Vermont corporation with principal offices at  225 S. Lake Avenue, Suite 250, Pasadena, CA, 91101.   Its registered agent is Business Filings Incorporated at 17 G W Tatro Dr., Jeffersonville, VT, 05464.

5.     Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below.  Plaintiff does not know who they are.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction under 28 U.S.C. §§1331 and 1367.   *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012);  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446  (7th Cir. 2005).

7.     Personal jurisdiction exists under 735 ILCS 5/2-209, in that Defendants:

a.     Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

b.     Have transacted business in Illinois.

8.      Venue in this District is proper for the same reason.

2

**FACTS**

9.      On or about September 26, 2018, Animal Medical Center of Orland Park, Inc., received the unsolicited fax advertisement attached as Exhibit A on his facsimile machine.

10.      On or about October 25, 2018, Animal Medical Center of Orland Park, Inc, received the unsolicited fax advertisement attached as Exhibit B on its facsimile machine.

11.      Exhibits A-B were sent by Defendant Scratch Financial, Inc. d/b/a/ Scratchpay and encourages the recipient to sign up for Scratchpay and offer financial services provided by Scratchpay to persons that contract for veterinary services from the recipient.

12.      Discovery may reveal the transmission of additional faxes as well.

13.      Defendant Scratch Financial, Inc. d/b/a/ Scratchpay is responsible for sending or causing the sending of  the faxes.

14.      Each fax refers to scratchpay.com, a website used by Defendant Scratch Financial, Inc. d/b/a/ Scratchpay.

15.      According to the website, Scratch Financial, Inc. d/b/a/ Scratchpay offers financing to persons seeking veterinary treatment for animals.

16.      Scratch Financial, Inc. d/b/a/ Scratchpay encourages veterinary practices such as Plaintiff to sign up with it,  i.e., become a "Partner Practice," allowing the practice to offer Scratchpay financing to animal owners who are unable or do not wish to pay in a lump sum.

17.      Upon becoming a Scratchpay "Partner Practice,"  Scratchpay sends a Launch Box  with free marketing materials to assist the participating clinic in promoting Scratchpay services. (Exhibit C -  FAQ for vets)

18.     According to its website, Scratchpay pays the practice immediately, minus an origination fee, when a person receives its financing.

19.     The person obtaining financing will, depending on the payment plan selected, either pay Scratchpay in 90 days with no interest, or pay in monthly installments over a period of 12 or 24 months with interest based on the rate for which he or she qualifies.   (Exhibit D - FAQ for patients)

20.     Defendant Scratch Financial, Inc. d/b/a/ Scratchpay and the practices  thus derive mutual economic benefit from the Scratchpay program promoted by the faxes.  The persons obtaining financing can purchase services without paying for them immediately.  The participating practice sells services that it could not otherwise sell, and gets paid immediately the price of its services minus the origination fee.  Scratch Financial, Inc., receives interest and origination fees.  The participation of the practices is essential in order for the persons obtaining financing to do so from Scratch Financial, as opposed to using a credit card or a local lender.

21.     Defendants either negligently or wilfully violated the rights of Plaintiff and other recipients in sending the faxes.

22.     Plaintiff had no prior relationship with Defendants and had not authorized the sending of fax advertisements to Plaintiff.

23.     On information and belief, the faxes attached hereto was sent as part of a mass broadcasting of faxes.

24.     On information and belief, Defendants directed the sending of the fax advertisements and have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

4

25.     There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited advertising faxes to avoid receiving illegal faxes.  Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

26.     Furthermore, the "opt out notice" required by the TCPA even when faxes are sent with consent or pursuant to an established business relationship was not provided in the faxes at issue..

## COUNT I – TCPA

27.     Plaintiff incorporates ¶¶ 1-26.

28.     The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

29.     The TCPA,  47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

> **(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

> **(B)  an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

> **(C)  both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

5

30.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.  Furthermore, Plaintiff's statutory right of privacy was invaded.

31.     Plaintiff and each class member is entitled to statutory damages.

32.     Defendants violated the TCPA even if its actions were only negligent.

33.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

34.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class.  The class consists of (a) all persons with Illinois fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c)were sent faxes by or on behalf of Scratch Financial, Inc. d/b/a/ Scratchpay promoting goods or services, (d) with respect to which Defendant did not have evidence of consent or an established business relationship prior to sending the fax.

35.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

36.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

    a.     Whether Defendants  engaged in a pattern of sending unsolicited fax advertisements;

    b.     The manner in which Defendants compiled or obtained its list of fax numbers; and

c.      Whether Defendants thereby violated the TCPA.

37.      Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

38.      Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

39.      A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

40.      Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* No. 08 C 2014, 2009 WL 3334909 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* No. 07 C 2973, 2008 WL 2224892 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* No. 10 C 1315, 2010 WL 4074379 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d

802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC,* No. 08 C 3276, 2010 U.S.Dist. LEXIS 72902 (N.D.Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communications, Inc.,* No. 08-cv-4521, 2010 WL 744262 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* No. 4:12-CV-221 (CEJ), 2013 WL 275568 (E.D.Mo. Feb. 24, 2013).

41.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a.     Actual damages;

b.     Statutory damages;

c.     An injunction against the further transmission of unsolicited fax advertising;

d.     Costs of suit;

e.     Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

42.     Plaintiff incorporates ¶¶ 1-26.

43.     Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiff and others.

44.     Unsolicited fax advertising is contrary to the TCPA and also Illinois law.  720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

45.     Defendants engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

46.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

47.     Defendants engaged in such conduct in the course of trade and commerce.

48.     Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave Defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail.  For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting.  The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink.  "Receiving a junk fax is like  getting junk mail with the postage due".   Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

9

49.     Defendants' shifting of advertising costs to Plaintiff and the class members in this manner makes such practice unfair.  In addition, Defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

50.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

51.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class.  The class consists of (a) all persons with Illinois fax numbers (b) who, on or after a date 3  years prior to the filing of this action (815 ILCS 505/10a), (c) were sent faxes by or on behalf of Scratch Financial, Inc. d/b/a/ Scratchpay promoting goods or services, (d) with respect to which Defendant did not have evidence of consent or an established business relationship prior to sending the fax.

52.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

53.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

    a.      Whether Defendants engaged in a pattern of sending unsolicited fax advertisements; and

    b.      Whether Defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

54.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has

retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

55.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

56.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

57.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a.      Appropriate damages;

b.      An injunction against the further transmission of unsolicited fax advertising;

c.      Attorney's fees, litigation expenses and costs of suit;

d.      Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

58.     Plaintiff incorporates ¶¶ 1-26.

59.     By sending Plaintiff and the class members unsolicited faxes, Defendants converted to their own use ink or toner and paper belonging to Plaintiff and the class members.

11

60.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

61.     By sending the unsolicited faxes, Defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable.  Such appropriation was wrongful and without authorization.

62.     Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

63.     Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

64.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

65.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class.  The class consists of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent faxes by or on behalf of Scratch Financial, Inc. d/b/a/ Scratchpay promoting goods or services, (d) with respect to which Defendant did not have evidence of consent or an established business relationship prior to sending the fax.

66.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

67.     There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members. The predominant common questions include:

      a.      Whether Defendants engaged in a pattern of sending unsolicited fax advertisements; and

      b.      Whether Defendants thereby converted the property of Plaintiff.

68.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

69.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

70.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

71.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

      WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

      a.      Appropriate damages;

      b.      An injunction against the further transmission of unsolicited fax advertising;

c.      Costs of suit;

d.      Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS TO CHATTELS

72.     Plaintiff incorporates ¶¶ 1-26.

73.     Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

74.     Defendants' sending Plaintiff and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to Plaintiff's trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

75.     Defendants acted either intentionally or negligently in engaging in such conduct.

76.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

77.     Defendants should be enjoined from continuing trespasses.

## CLASS ALLEGATIONS

78.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class.  The class consists of (a) all persons with Illinois fax numbers (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent faxes by or on behalf of Scratch Financial, Inc. d/b/a/ Scratchpay promoting goods or services, (d) with respect to which Defendant did not have evidence of consent or an established business relationship prior to sending the fax.

79.     The class is so numerous that joinder of all members is impractical.  Plaintiff

14

alleges on information and belief that there are more than 40 members of the class.

80.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

        a.     Whether Defendants engaged in a pattern of sending unsolicited fax advertisements; and

        b.     Whether Defendants thereby committed a trespass to chattels.

81.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

82.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

83.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

84.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

        a.     Appropriate damages;

15

b.      An injunction against the further transmission of unsolicited fax

        advertising;

c.      Costs of suit;

d.      Such other or further relief as the Court deems just and proper.

           s/ *Daniel A. Edelman*
           Daniel A. Edelman

           Daniel A. Edelman
           EDELMAN, COMBS, LATTURNER
               & GOODWIN, LLC
           20 S. Clark Street, Suite 1500
           Chicago, Illinois  60603
           (312) 739-4200
           (312) 419-0379 (FAX)

               And

           /s/ *Frank F. Owen*
           Frank F. Owen, Esq.
           Florida Bar No. 0702188
           FFO@CastlePalms.com
           Frank F. Owen & Associates, P.A.
           1091 Ibis Avenue
           Miami Springs, Florida 33166
           Tel:  (305) 984-8915
           FFO@Castlepalms.com

           Attorneys for Plaintiff Animal Medical Center
           of Orland Park Inc. and all others similarly
           situated

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

<u>s/ *Daniel A. Edelman*</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
       & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

       And

<u>/s/ *Frank F. Owen*</u>
Frank F. Owen, Esq.
Florida Bar No. 0702188
FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Tel: (305) 984-8915
FFO@Castlepalms.com

Attorneys for Plaintiff Animal Medical Center of Orland Park Inc. and all others similarly situated

17

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

s/ Daniel A. Edelman
Daniel A. Edelman

And

/s/ Frank F. Owen
Frank F. Owen, Esq.
Florida Bar No. 0702188
FFO@CastlePalms.com
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166
Tel: (305) 984-8915
FFO@Castlepalms.com

Attorneys for Plaintiff Animal Medical Center of Orland Park Inc. and all others similarly situated

# **EXHIBIT A**



# NO SIGN UP FEE, NO MONTHLY FEE, NO HARDWARE, NO OBLIGATION



## SIGN UP YOUR CLINIC NOW FOR FREE!

# scratchpay.com/fax

To be removed from future fax communications with Scratchpay, please email UNSUBSCRIBE+[fax number] to support@scratchpay.com

# **EXHIBIT B**

Case: 1:20-cv-02803 Document #: 1 Filed: 05/08/20 Page 22 of 37 PageID #:22

REDACTED



To be removed from future fax communications with Scratchpay, please email UNSUBSCRIBE+[fax number] to support@scratchpay.com

# EXHIBIT C

FAQs | Scratchpay



**scratchpay**

SIGN IN

# Frequently Asked Questions

| FOR PATIENTS | FOR PRACTICES |
| --- | --- |

## What does it cost to offer Scratchpay? ⌃

Nothing! The only cost associated with Scratchpay is a flat 5% transaction fee whenever a patient pays you using Scratchpay. There are no set-up fees, no long term contracts or commitments, and no hardware requirements.

## How do I offer Scratchpay? ⌃

Offering Scratchpay is easy! All we need to get you started is some basic contact info. Once a patient pays you using Scratchpay, we'll need routing information to pay you. Sign up for Scratchpay by following this link to our Scratchpay Partner Application.

## How will my patients know I offer Scratchpay?

Scratchpay sends each Partner Practice a Launch Box with free marketing materials. If your practice ever needs more free supplies, just let us know by messaging support@scratchpay.com.

---

## How do patients apply for Scratchpay? ⌃

Patients simply visit scratchpay.com on a computer, tablet, or phone and click "Find A Payment Plan" to start the application.

---

## How do I know when a patient has paid me with Scratchpay? ⌃

Scratchpay sends instant emails to your practice as soon as your patient is approved. These emails let you know who the patient is, how much they're approved for, and function as a guarantee for the full amount listed in the email, so you can get to work on the patient immediately!

---

## How does Scratchpay know how much to pay me? ⌃

Once you're partnered with Scratchpay, we activate your practice's very own Scratchpay Dashboard. Your practice can use the Scratchpay Dashboard to finalize any open payments as well as review past payments.

## How do I get paid by Scratchpay? ⌄

Scratchpay pays your practice through Direct Deposit. Each payment Scratchpay makes for patients at your practice will be its own line item in your bank statement from Scratchpay with an addendum detailing the patient's name and the fee associated with that transaction.

## Does Scratchpay send monthly statements? ⌄

Yes! Scratchpay sends your practice monthly statements in the first week of the following month. You can also view your past Scratchpay payments through your Scratchpay Dashboard.

## What happens if the patient fails to pay Scratchpay? ⌄

Scratchpay takes full responsibility for the patient once they're approved and works with the patient to pay us back. A patient's ability to repay us has no effect on your practice. You get paid upfront and we take care of the patient.

## Do we have to check IDs? ⌄

No! You don't have to check IDs, photocopy credentials, or gather any sensitive information. Each Scratchpay payment confirmation email will include a 6-digit Confirmation Code, which is identical to the one your patient receives when they're approved. Just ask the patient for the code and you're all good to go!

---

## What if I need to refund a patient? ⌃

No problem! Just let us know the amount that needs to be refunded and we'll remove that amount from the patient's account with us. If we've already paid those funds to your practice, don't worry! We'll create a Refund Tracker and use those funds against future payments to your practice.

---

## What if a patient needs more funds? ⌃

We let each patient know exactly how much Scratchpay can lend to them. If a patient needs more funds, ask them to check their email to see any additional amounts still available to them through Scratchpay. All a patient needs to do to activate these funds is go through the application again.

If it's been more than 7 days since the patient last used Scratchpay, just have them apply again at scratchpay.com.

## What if a Payment Authorization Email is Not Received? ⌃

If there's ever an issue with Scratchpay, get in touch with our Support Team immediately by either phone or email.

Phone: 855-727-2395
Email: support@scratchpay.com

## What if a patient doesn't have a phone that can receive text messages? ⌃

As a part of identity verification in our application, we text a one-time code to your patient's cellphone. They don't need a smartphone, the phone just needs to be able to receive a text. If there's ever a case where a patient doesn't have a textable phone, you can try having the code texted to someone else's or reach out to our Support Team.

Phone: 855-727-2395
Email: support@scratchpay.com

## How do I contact Scratchpay? ⌃

Our friendly, understanding representatives are here 7 days a week to help you. We are dedicated to answering your questions by phone, email or text:

Phone: 855-727-2395

Fax: 213-402-6975

Email: support@scratchpay.com

---

Questions?

We're here to help

Contact Form

Here

Text or Call

855-727-2395

Email

support@scratchpay.com

FOR CLINICS

Access dashboard

Find training materials

Refer a friend

View webinars

FOR BORROWERS

Log in

Find your payment plan

Find your practice

SUPPORT

FAQ

Contact us

Legal

Credit education program

SCRATCHPAY

Meet the team

Press

Blog

Careers

©Scratch Financial, Inc. ©Scratchpay (NMLS ID#: 1582666) NMLS Consumer Access

## **EXHIBIT D**



**scratchpay**

SIGN IN

# Frequently Asked Questions

| FOR PATIENTS | FOR PRACTICES |
|---|---|

**Does this affect my credit score in any way?** ⌃

We perform a soft credit inquiry when you check your rate through Scratchpay.com. This step allows you to check what rates and terms may be available to you. That inquiry will not affect your credit score at all.

If you are pre-approved for our Pay Later product, and choose to continue the Pay Later application, no hard credit inquiry will be performed and there will be no impact on your credit score at all.

In an instance where you are pre-approved for our Pay Over Time product, and choose to continue the Pay Over Time application, one hard credit inquiry will be performed. Hard inquiries can affect your credit score and are visible to third parties reviewing your credit report.

The interest rates on the website are a range. When will I get an exact number? ∧

Since our merit-based interest rates are based on your entire personal and financial profile, your exact interest rate is calculated after you have submitted an application. Remember that submitting an application will not impact your credit score. If we offer you a loan and you are not satisfied with the interest rate you can easily decline our offer at zero cost, and there will be no impact on your credit score.

---

Do you link up with my bank account? Are payments made automatically or do I need to pay manually? ∧

We provide an automatic payment option called an Electronic Fund Transfer via ACH so you never have to worry about forgetting a due date again. Using this option, we electronically debit your bank account for the amount you owe on your due date. Other payment options are available. Call 855-727-2395 to speak with a Specialist today to schedule your next payment.

---

Does Scratchpay pay the practice immediately, and then I pay Scratchpay in installments with interest? ∧

Exactly! Scratchpay pays the practice immediately. Depending on the payment plan you have selected, you either pay Scratchpay in 90 days with no interest, or in monthly installments over a period of 12 or 24 months with interest based on the rate you qualify for. Scratchpay's Take 5 loans are interest-free, so you'll only be responsible for the total cost of treatment.

## What happens if I miss a payment? ⌃

If you have already missed your scheduled payment, call our Payment Planning Team at 855-727-2395. Our payment planning Specialists are committed to getting you back on track by helping you set up a payment arrangement that fits your budget.

## What if I can't make an upcoming ⌃ payment?

If you find that you can't make an upcoming payment on your loan, call our friendly Customer Service Specialists at 855-727-2395. We will do our best to find a solution that keeps you on track.

## Can I make additional payments or ⌃ prepay my whole loan?

Of course! If you find yourself ahead of the game, you can make additional payments at your convenience with NO prepayment fees or penalties. Prepaying your loan will reduce future interest payments. To make an additional payment just call us at 855-727-2395. Refer to our Terms of Service for details on how payments are applied to outstanding balances.

---

## Do I have to use one of your listed practices? Can I suggest a practice? ⌃

Yes, Scratchpay is only accepted at our partner locations. If your provider is not currently a Scratchpay partner (or if you would like to suggest a provider be added to the Scratchpay network) email the name of your practice to support@scratchpay.com and we will have a member of our Partnerships Team reach out to your practice.

---

## How many medical bills can I use Scratchpay for? Can I put every practice visit on Scratchpay? ⌃

Yes! You can apply to use Scratchpay for every medical bill you have, and there is no pre-set limit to the number of medical bills you can use Scratchpay for. Applying will not affect your credit score. Within seconds of applying we let you know

which plans are available for your
transaction.

---

## What bills can I get covered with Scratchpay? Are your payment plans only with veterinary care?

Scratchpay is offered in a wide variety of
practices in the health and wellness
space, including dental, vision,
chiropractic and more. You can check out
a list of Scratchpay partners in our
directory at
www.scratchpay.com/practices/search.

---

## How do I contact Scratchpay?

Our friendly, understanding
representatives are here 7 days a week to
help you. We are dedicated to answering
your questions by phone, email or text:

Phone: 855-727-2395
Fax: 213-402-6975
Email: support@scratchpay.com

---

Questions?

We're here to help

Contact Form
Here

Text or Call

855-727-2395

Email

support@scratchpay.com

FOR CLINICS

Access dashboard

Find training materials

Refer a friend

View webinars

FOR BORROWERS

Log in

Find your payment plan

Find your practice

SUPPORT

FAQ

Contact us

Legal

Credit education program

SCRATCHPAY

Meet the team

Press

Blog

Careers

©Scratch Financial, Inc. ©Scratchpay (NMLS ID#: 1582666) NMLS Consumer Access